# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00758-SCT

*DAVID LYNN UNRUH*

*v.*

*STEVE PUCKETT, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/22/96 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | JANE LANIER MAPP |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 6/25/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/16/98 |

**BEFORE PRATHER, P.J., BANKS AND McRAE, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. In this case we are called upon to address the appellant's claim that he should be allowed to serve his state time in a federal facility. The basic question is whether the issues should be tried now or later. The trial court said later is better and dismissed the appellant's complaint. Because we believe this delay serves little purpose, we reverse and remand with directions to appoint counsel and proceed with the consideration of the appellant's claim.

### I.

¶2. At the time this matter arose David Lynn Unruh was serving time at Parchman for crimes in Lowndes County as a habitual offender. The record indicates that during his incarceration from 1987 until April, 1988, Unruh served as an informant and witness for a federal investigation of a money order scam at the Mississippi State Penitentiary. The investigation resulted in the indictment and conviction of several individuals for conspiracy and mail fraud.

¶3. As a result of Unruh's participation in this case, the United States Attorney requested that he be allowed to serve the remainder of his sentence in federal custody. Thomas F. O'Neil of the United States Attorney's Office for the District of Maryland acknowledged that because Unruh's testimony was the primary factor leading to the indictment and conviction of several inmates and prison officials, his safety would be severely jeopardized if he remained in the Mississippi prison system. On August 15, 1988, Unruh's transfer from the MDOC to federal custody was approved by the Interim Commissioner of Corrections and the Governor, pursuant to Miss. Code Ann. § 47-5-175 (1993).[1] On August 24, 1988, O'Neil requested that Unruh be transferred to the Talladega federal facility in Alabama.

¶4. In an affidavit Unruh claims that he testified in support of the federal government's case in exchange for complete immunity, assistance in obtaining parole from the Mississippi Parole Board, admission to the Federal Witness Protection Program, and a promise that he would serve the remainder of his Mississippi sentence under federal custody in Talladega. However, shortly after arriving in Alabama, Unruh was transferred to the Lowndes County Jail in Columbus, Mississippi, where he claims he was harassed and threatened by other inmates. On or about September 1, 1990, allegedly fearing for his life, Unruh escaped from the county jail.

¶5. After his escape from the Lowndes County Jail, Unruh found his way to South Dakota where he is currently serving time in the South Dakota State Penitentiary on an unrelated conviction. While incarcerated there, Unruh submitted to the Mississippi Department of Corrections (MDOC) an Offender's Relief Request form on September 28, 1995, and a Third Step Response form October 17, 1995, requesting an administrative remedy. The MDOC Administrative Remedy staff denied Unruh's request, finding that the agreement between the U.S. Government and the State of Mississippi was never consummated.

¶6. On November 13, 1995, Unruh filed a complaint in the Circuit Court of Hinds County, Mississippi, against the MDOC. This case was later transferred to the Sunflower County Circuit Court. In his complaint, Unruh requests that the MDOC be restrained from placing the appellant in any Mississippi penal facility. Also, the complaint requests that Unruh be appointed counsel. The MDOC submitted an answer to the complaint March 27, 1996, arguing that the complaint should be dismissed without prejudice because Unruh is currently listed as an escapee. Additionally, the MDOC claims that it was unaware of any agreement to allow Unruh to serve his sixteen (16) year Mississippi sentences in another state.

¶7. On May 22, 1996, the circuit court acknowledged Unruh's cooperation with the federal investigation in several money order scam cases; however, it ordered that the complaint be dismissed because Unruh was not scheduled for release from the South Dakota prison until the year 2008. The circuit court concluded that consideration of Unruh's complaint at this time would be useless and that Unruh was free to submit a similar petition when released to the State of Mississippi.

¶8. The circuit court issued an order June 19, 1996, permitting Unruh to appeal this matter to the Supreme Court of Mississippi *in forma pauperis.* A notice of appeal was filed on July 2, 1996.

II.

¶9. Unruh offers various theories in support of his claim that he should be allowed to serve his state

time in a federal facility. First, Unruh argues that the MDOC breached its contractual promise to allow the appellant to serve the remainder of his state sentences in federal custody. Secondly, he argues that MDOC officials have full knowledge of the danger and safety risks that would prevail if Unruh was placed in a Mississippi penal facility. As such, Unruh claims that he would be subjected to cruel and unusual punishment in violation of his state and federal constitutional rights if placed in a Mississippi penal facility. The complaint requests that the MDOC be restrained from placing Unruh in a Mississippi penal facility, and that the appellant be granted access to adequate legal assistance while incarcerated in the South Dakota penitentiary.

¶10. The State takes the position that Unruh escaped after the agreement and that he should be returned to Mississippi in order to face charges related to that and an earlier escape. It supports the trial court's conclusion that the matter is not yet ripe for trial because no transfer to Mississippi is imminent. It also asserts that the statute of limitations has run on Unruh's "contract" claim that he be able to serve the remainder of his time in federal custody. Finally, it argues that the appeal should be dismissed because Unruh was improperly allowed to appeal a civil action *in forma pauperis*.

¶11. The circuit court correctly found that Unruh's complaint was a post-conviction relief motion requesting that he not be returned to the State of Mississippi pursuant to the transfer which was approved by the MDOC and the Governor. As such, an appeal *in forma pauperis* is proper. According to Miss. Code Ann. § 99-39-5(1)(g) (1994), appropriate grounds for relief under the post-conviction relief act exist where any prisoner claims he is otherwise unlawfully held in custody. It is true that Unruh is not currently being held in Mississippi due to his incarceration elsewhere. However, but for this incarceration, he would be subject to imprisonment here. The State of Mississippi has a "hold" on Unruh and he will be released to Mississippi immediately following his present incarceration. Thus, Unruh can legitimately said to be in custody for purposes of § 99-39-5(1)(g).

¶12. The State also argues that Unruh's complaint should be dismissed because Unruh is not scheduled to be released from the South Dakota prison for almost twelve years. The State contends that this Court should defer the matter to a later time because it is pointless to consider Unruh's complaint until he is released from the South Dakota prison.

¶13. Unruh concedes that his release from the South Dakota penitentiary could be delayed for twelve years or more, but the option for early release is also possible. Unruh has executed habeas corpus proceedings for reversal of his South Dakota conviction and if early release is granted the appellant would be subject to custody by the MDOC immediately. Thus, even if Unruh were granted a hearing at that time concerning his safety as an inmate in the MDOC, it is probable that he could spend time in the MDOC pending the outcome of such a hearing. It is foreseeable that Unruh could be put in an unsafe situation if released early and not transferred to federal custody. Also, Unruh argues that delaying consideration of his complaint could undermine his opportunity for a fair hearing because witnesses could suffer memory loss of important facts or become unavailable because of death.[2]

¶14. An immediate resolution to the issue of where Unruh will serve his Mississippi sentence minimizes the probability that Unruh will enter harm's way in the MDOC. The trial court decided that Unruh could better try this case at a time when his release from South Dakota was nearer. The court did not say that Unruh must await a return to state custody. We conclude that this delay serves no

real purpose. The events in question happened from seven to nine years ago. Waiting another ten years to make the appropriate factual determinations and the correct application of the law frustrates the quest for truth. Theoretically, Unruh will still be incarcerated in South Dakota and it will be just as difficult to try these issues under those circumstances. The only factor which recommends this course is the possibility that the problem will somehow go away before it has to be tried.

¶15. If the State of Mississippi wants to try Unruh for escape it should to arrange to get him here and try him. If he is brought back for trial on escape, the matter of his future incarceration on the original charges can be tried at that time. If he is not brought back for trial on the escape charges those charges should be dropped and the court should proceed to determine the place of his ultimate incarceration for the original charges for which he was serving time when he escaped.

### III.

¶16. Unruh claims that he has been subjected to cruel and unusual punishment contrary to his state constitutional rights under Miss. Const. art. III, § 28, and his federal constitutional rights under U.S. Const. amend. VIII. This Court has stated that "in order to state a cognizable claim under the Eighth Amendment, the complaint must allege acts or omissions on the part of the particular defendant(s) amounting to deliberate indifference to the rights and welfare of the plaintiff." *Bilbo v. Thigpen*, 647 So. 2d 678, 691 (Miss. 1994); *Yizar v. Ault*, 462 S.E. 2d 141 (Ga. 1995); *Farmer v. Brennan*, 511 U.S. 825 (1994).

¶17. The decision to transfer Unruh from the MDOC to federal custody strongly suggests that prison officials believed that Unruh's safety was compromised at the Mississippi State penitentiary. Otherwise, they would not likely have granted the initial transfer and accepted responsibility for the cost of housing Unruh in federal custody. However, the record suggests evidence that from November, 1988, until September 1, 1990, Unruh was jailed in the Lowndes County Jail in Columbus, Mississippi, and subject to threats, harassment and violence.[3] Furthermore, the record indicates that counsel representing Unruh wrote several letters to MDOC officials explaining the danger to his life if he was not transferred to federal custody. It is important to note that these events occurred after Unruh's transfer to federal custody was approved between November, 1988 and September, 1990. In addition, the record contains letters from the United States Attorney to the MDOC requesting that the appellant not be placed in the Mississippi prison system because of the danger from revenge-minded inmates.

¶18. The circuit court did not address Unruh's claim of cruel and unusual punishment. The circumstances which led to Unruh's temporary incarceration in the Lowndes County Jail and subsequent escape are not thoroughly described in the record. However, on remand, the issue of whether Unruh's constitutional right to be free from cruel and unusual punishment has been violated should be heard by the trial court.

### IV.

¶19. In his complaint Unruh argues that he should be appointed legal counsel to facilitate his access to the Mississippi courts. In particular, Unruh states that because he is incarcerated in the South Dakota penitentiary he does not have access to Mississippi materials and case law, and that his ability to articulate a legal basis for his contention here on appeal has been detrimentally affected. This

Court has acknowledged the requirement placed on state prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing law libraries, or assistance from persons trained in the law. *Neal v. State*, 422 So. 2d 747, 748 (Miss. 1982); *Bounds v. Smith*, 430 U.S. 817 (1977). *Lewis v. Casey,* 518 U.S. 343 (1996).

¶20. Unruh's access to Mississippi case law materials has been limited because the South Dakota prison facility does not maintain Mississippi law materials. The issue is whether Unruh has been provided adequate legal assistance by the MDOC. In *Pruitt v. Hess*, 923 P.2d 325 (Colo. Ct. App. 1996), the Colorado Court of Appeals, relying on the Supreme Court holding in *Bounds*, indicated that a prison inmate has no absolute right to use a law library. However, an inmate has a right to ". . . meaningful access to the courts to pursue constitutional claims." *Pruitt*, 923 P.2d at 327. The foundation of Unruh's instant claim focuses on his transfer from the MDOC to federal authorities for the remainder of his Mississippi sentence. In addition, Unruh asserts a constitutional claim under the Eighth Amendment regarding his right to be free from cruel and unusual punishment. According to the court in *Pruitt*, ". . . if a state chooses not to provide legal representation to inmates desiring to assert such claims, that state must provide reasonable access to legal research materials for review by the inmate." *Pruitt*, 923 P.2d at 327. *See also Bounds v. Smith*, 430 U.S. 817 (1977).

¶21. Unruh claims that his requests for legal assistance to the Mississippi State Penitentiary Law Library have been ignored, and that the Mississippi State Law Library has advised him to provide more detailed requests. Also, Unruh states that he cannot afford an attorney. Unruh has not been provided adequate legal assistance and his access to the courts has been impeded, if not frustrated. It is obvious that Unruh's claim will require a hearing. It follows that under these circumstances he should be appointed counsel with respect to this claim pursuant to Miss. Code Ann. § 99-39-23(1) (1994). Therefore, this Court directs that upon remand the trial court should appoint counsel to proceed with the consideration of Unruh's claims.

V.

¶22. For the foregoing reasons, we reverse the order of the trial court and remand for proceedings consistent with this opinion.

¶23. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN, P.J., McRAE AND MILLS, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN JOINED BY ROBERTS, J. PITTMAN, P.J., AND WALLER, J., NOT PARTICIPATING.**


**SMITH, JUSTICE, DISSENTING:**



¶24. The majority writes that Unruh, convicted as a habitual offender in Lowndes County Circuit Court, should be allowed to have his claim heard now that he is entitled to serve his state sentence in a federal prison. The majority further directs the lower court to appoint counsel. On remand, the

majority directs the lower court to consider whether Unruh's Eighth Amendment rights concerning cruel and unusual punishment have been violated due to his not being allowed to serve his state sentence in federal prison.

¶25. The majority also holds that although Unruh is not currently being held in Mississippi, due to his incarceration in South Dakota, but for this incarceration, he would be subject to imprisonment here. Thus, the majority reasons that because Mississippi has a "hold" on Unruh for jail escape, Unruh can legitimately be said to be in custody for purposes of Miss. Code Ann. § 99-39-5(1)(g). First, the majority is stretching the statute in this regard, because the statute clearly only applies where a prisoner can make out a valid claim that he is "otherwise unlawfully held in custody." He is not in custody period in Mississippi, and he is admittedly lawfully held, serving a validly imposed sentence in South Dakota, therefore he is not in "otherwise unlawfully held in custody." *Id.*

¶26. Next, there is nothing in this record, other than his own bald assertions, that Unruh and the State of Mississippi ever reached any agreement for him to serve his entire Mississippi sentence in a federal prison. Considering the letter executed by Governor Ray Mabus and Commissioner Charles Jackson where Unruh was allowed to be held in Maryland, at Mississippi's expense, it is apparent that this was only a temporary arrangement for convenience, since the federal money order scam cases that Unruh testified in were conducted in Maryland. Neither Gov. Mabus nor Commissioner Jackson refer to any permanent arrangement or agreement allowing Unruh's entire sentence to be served in federal prison. While temporarily in a federal prison in Maryland, he was transferred to a federal prison in Alabama. Ultimately, he was temporarily sent to Lowndes County Jail. Unruh was moved both times by federal marshals, not Mississippi officials. Unruh did not seek any further assistance from federal or Mississippi officials. Instead, he apparently escaped and fled to points unknown. He ended up in South Dakota, where not surprisingly, he committed another felony, was convicted and sentenced to prison there.

¶27. Unruh's claim of an alleged agreement is not supported by the record and is denied outright by the State. Furthermore, the claim is time-barred under Miss. Code Ann. § 15-1-49, since more than six years elapsed from the time of the so called promise, due solely to Unruh's jail escape and flight to parts unknown. Unruh has only himself to blame. There is no evidence of any agreement other than allegations unsupported by the record. The claim is time barred and alternatively without merit.

¶28. Finally, regarding the Eighth Amendment violation, the claim is clearly not ripe for adjudication, if in fact any violation has occurred. *State ex rel. Holmes v. Griffin*, 667 So. 2d 1319, 1324 (Miss. 1995). Unruh is simply attempting to bring this issue because of a possible future action, i.e., ultimate incarceration within the Mississippi penal system, which he claims might expose him to danger. If Unruh was in fact incarcerated in Mississippi and could establish present danger, he would be entitled to be heard on this issue. *Helling v. McKinney*, 509 U.S. 25 (1993). Instead, Unruh is incarcerated in South Dakota for another felony, wholly unrelated to the previous mentioned federal trial, the Mississippi convictions, or the hold placed upon him by Mississippi. Unruh admits that he is not scheduled to be released by South Dakota for twelve years. By the time Unruh is due to be released from his sentence there, a total of twenty years will have elapsed since his testimony in federal court concerning the Mississippi prison money order scam. Whether he would indeed be subjected to possible harm after twenty years is speculative at best, but is an issue that should only be decided by the lower court when Unruh is released from South Dakota, and if and when, he is ever returned to

Mississippi. The lower court judge, in spite of there being no agreement, was certainly aware of the possible need to consider Unruh's safety in the Mississippi prison system, if and when he is ever returned to the state. The judge commented, "Were he to be returned to the Mississippi Penal System in the near future this court would conduct an extensive hearing regarding the safety of petitioner when incarcerated in the penal system." I find no error by the learned lower court judge and would affirm.

¶29. I respectfully dissent.

**ROBERTS, J., JOINS THIS OPINION.**

1. Miss. Code Ann. § 47-5-175 provides:

> The Commissioner of Corrections, with the concurrence of the Governor, is hereby authorized to enter into agreements with appropriate federal agencies to provide housing and incarceration of persons convicted by the courts of Mississippi and sentenced to the Mississippi Department of Corrections by such courts under such terms and conditions as may be prescribed if a determination is made that the best interest of the State of Mississippi would be served by making such transfer.

2. Postal Inspector James Argubright, who was intimately involved in the Money Order Scam case and Unruh's request for transfer to federal custody, has since died.

3. Although Unruh's affidavit indicates that he was transported to the Lowndes County jail by United States Marshals, the fact remains the Interim Commissioner of Corrections and Governor approved Unruh's transfer to federal custody because it was in the best interest of the State of Mississippi.