L STEWART, J.
The defendant, Marcus Doron Floyd, was tried and convicted of armed robbery. He was sentenced to 18 years at hard labor without benefit of probation, parole, or suspension of sentence. The defendant now appeals. Based on the following, the defendant’s conviction and sentence are affirmed.
FACTS
Derrick Boone, a full-time student at Grambling State University, reported that he was awakened by the sound of his doorbell on February 23, 2001, at approximately 8:00 a.m. Boone then went to the door and found Darion Butler and Marcus Floyd at the door. Boone put on his robe, returned to the door and proceeded to open it. At this moment, Floyd tried to force his way through the door. Butler helped Floyd force the door open when Boone almost managed to close it. Floyd was armed with a revolver, and Boone and Floyd wrestled over the gun; however, Butler intervened and subdued Boone. Floyd and Butler first attempted unsuccessfully to bind Boone’s hands behind his back with duct tape before using speaker wire. Floyd asked Boone for money and hit Boone with the gun. Next, Butler held Boone at bay by placing his knee in Boone’s back as Floyd went to the back of the house. A gunshot was heard from the back of the house. Floyd then returned from the back of the house and stated, “You think I’m playing,” and threatened to kill Boone. Floyd proceeded to hit Boone with the gun and the two men wrestled again. Butler intervened and put his foot on Boone before Boone started to turn the gun on the defendant. While |2Boone was lying on his stomach, he heard a door slam and saw Floyd walk out the front door.
Butler took Boone to the living room and told Boone to lie on the sofa. Boone protested. Butler forced Boone into the bathroom at gunpoint. After a few seconds, Boone opened the bathroom door and called the police. Boone discovered *387 that a gold bracelet and his cell phone were missing. The bracelet had been on the headboard in his bedroom and the cell phone had been on a small table near the front door. Butler was apprehended about one-quarter mile from Boone’s residence with Boone’s cell phone in his possession. Butler pled guilty to simple burglary in connection with this incident and was sentenced to serve eight years at hard labor, of which seven years were suspended.
The jury found the defendant guilty of armed robbery. The trial court sentenced the defendant to serve 18 years at hard labor without benefit of probation, parole, or suspension of sentence. From this conviction and sentence, he now appeals.
DISCUSSION

Sufficiency of the Evidence

The defendant argues that there was insufficient evidence that he committed an armed robbery of Derrick Boone due to: 1) the lack of physical evidence linking him to the crime; 2) the unreliability of Boone’s testimony; and 3) the unreliability of Butler’s testimony.
The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the ^prosecution, any rational trier of fact could have found the essential elements of the crime, proven beyond a reasonable doubt.. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
When circumstantial evidence forms the basis for the ■ conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, ┴4supra. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994); State v. Owens, supra.
This court’s authority to review questions of fact in a criminal case is limited to the sufficieney-of-the-evidence evaluation under Jackson, and does not extend to credibility determinations made by the trier of fact. State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. Bosley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Bellamy, 599 So.2d 326 (La.App. *388 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992). Likewise, the testimony of the victim'alone is sufficient to prove the elements of the offense even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Turner, 591 So.2d 391 (La.App. 2d Cir. 1991), writ denied, 597 So.2d 1027 (La. 1992).
To convict of armed robbery the state must prove that the defendant (1) took anything of value (2) belonging to another (3) from the person of another or in the immediate control of another (4) by use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64. The requirement that there be property taken “from the person of another” has been broadened to include taking “in the presence of the person.” 1 ¡¿Property is considered taken from the presence of the victim even if the victim is in one room while valuables located in another room are removed. State v. Refuge, 300 So.2d 489 (La.1974); State v. Ferret, 174 La. 1059, 142 So. 688 (La.1932); State v. Loyd, 35,637 (La.App.2d Cir.2/27/02), 810 So.2d 1214.
Although there are inconsistencies between Boone’s police statement and his trial testimony, this is one of any number of factors the jury weighs in determining whether or not to believe a witness’s trial testimony. State v. Dunn, 30,346 (La. App.2d Cir.2/25/98), 708 So.2d 512; State v. Bender, 598 So.2d 629 (La.App. 3d Cir. 1992), writ denied, 605 So.2d 1125 (La. 1992).
Butler testified that Boone was known to be a drug dealer. He further testified that he and the defendant met through Tyrone Vereen and they planned to go to Boone’s house and take Boone’s money. On Friday, February 23, Floyd and Ver-een picked up Butler at his apartment. Floyd brought a gun and Butler brought the duct tape. Butler and Floyd exited Vereen’s car, which was parked across from Boone’s apartment, and knocked on the door of Boone’s apartment. Boone looked out the blinds and told them to wait.
Butler testified that Floyd hit Boone in the face area with the butt of the gun three to five times. Butler further testified that the defendant “stuck [the gun] up the victim’s butt” and asked about the money. Butler testified that Boone told them that the money was in the closet, and Floyd went into Boone’s bedroom while Butler stayed with Boone. Then, Butler heard a | ^gunshot come from the bedroom area. About 15 seconds later, the defendant ran from the back of the house and out of the front door of the house. Butler testified that he did not see the defendant run out of the house with anything in his hands except the gun. Butler stated that this was the last time he saw Floyd. Butler testified that he did not strike Boone, and that he never went into Boone’s bedroom. Butler admitted that he took Boone’s cell phone.
Officer Monty Keith Russell of the Ru-sten Police Department responded to Boone’s apartment. When Boone came to the door of his apartment, Officer Russell called him to his vehicle. Officer Russell testified that Boone was bloody, shaken, and had been severely battered. Before he could speak with Boone extensively, Officer Russell received a call from Officer Brian Davis that he had apprehended a suspect, who was covered in blood, two blocks away from the apartment. Officer Russell escorted Boone to that scene where Boone identified Butler as one of the men who battered him. Boone returned with Officer Russell to his apartment. Officer Russell called an ambulance service and Lt. Tommy Doss, an investiga *389 tor with the Ruston Police Department. Officer Russell testified that his primary responsibility was to secure the scene for Lt. Doss.
Officer Russell spoke with Boone while Boone was attended to by medical personnel. Officer Russell testified that Boone told him that he was waiting for a friend when he heard someone at his door. Boone told him that the defendant forced his way into the apartment with Butler’s help, gained entry, and hit Boone several times in the head. Officer Russell |7further testified that Boone said that he struggled with the defendant over the gun. Butler joined in the struggle, which spread •throughout the house including the living room and the bedroom. Boone told Officer Russell that both Floyd and Butler rummaged through his bedroom. Boone said that a shot had been fired, but he did not know who had fired it.
Lt. Doss participated in the investigation of the robbery by processing the evidence and taking photographs. Lt. Doss testified that he was unable to lift any fingerprints at the crime scene due to the amount of blood in the apartment. Lt. Doss testified that he found bullet fragments and duct tape. Lt. Doss also collected Boone’s robe. The bullet jacket was found in the living room next to the hallway, about two feet from the nearest bedroom. Lt. Doss further testified that the gun was not found and no ballistics testing was performed on the bullet fragments. Lt. Doss testified that he did not know how long the bullet fragments had been in Boone’s apartment.
In his testimony, Floyd admitted that he had prior convictions for possession of marijuana, possession of cocaine, and verbal assault. In February 2001, he came to Louisiana from his home in Florida to work at a friend’s clothing store. He met Butler on Tuesday night, three days before this incident, through a mutual friend at a “smoke-out” party. Floyd stated that Butler knew where to find marijuana and he wanted to smoke marijuana. On Wednesday morning, the defendant saw Ver-een and they went to Butler’s apartment. The defendant testified that they smoked more marijuana at Butler’s apartment. On Friday morning about 8:00 a.m., Ver-een picked up the defendant and they went to Butler’s apartment again. | «He further testified that he and Butler planned to buy an ounce of marijuana and smoke it before Floyd left town by bus at 1:30 that afternoon. He testified that he went to Boone’s apartment because he thought Boone sold marijuana.
Floyd described the events of the day by stating that Vereen dropped off him and Butler at Boone’s apartment. Boone looked out of the window and gestured for Butler to wait. Boone returned and opened the door. The defendant followed Butler inside the house. The defendant testified that Butler gave $80 dollars to Boone, then words were exchanged. The defendant testified that “one thing led to another” and all three men started fighting. ■ The defendant admitted that he struck Boone with his fist, but he realized that the fight was not “his battle” so he left and walked to Vereen’s house.
Floyd testified that as he started to tell Vereen about the incident, the police arrived and took him into custody. He further testified that he did not have time to change clothes and he did not have any blood on himself. The police did not attempt to fingerprint him and did not find a gun or the bracelet in his possession. He testified that he told the police that he did not know anything about an armed robbery, nor did he have a gun, hit Boone with a gun, or steal anything from Boone. Floyd testified that he offered to submit to forensic testing for' gun residue, but the test was not performed.
*390 Lt. Eric Hanna, of the Ruston Police Department, testified that he spoke with Floyd about the incident. During this statement, the defendant said that he spent Thursday night at Vereen’s apartment. Upon cross |3examination, Floyd denied that he spent the night at Vereen’s apartment or that he made that statement to Lt. Hanna.
Lt. Hanna’s testimony indicated that the police arrived at Vereen’s apartment shortly after 9:00 a.m. on Friday morning. Lt. Hanna further testified that the defendant was exiting the bathroom of Vereen’s apartment when he was apprehended. Lt. Hanna testified that he did not see any blood on the defendant or his clothing. Officer Marchale Canty testified that there was approximately 20 minutes between their arrival at Vereen’s apartment and the defendant’s arrest. Vereen testified that on Friday morning, the defendant came to his apartment and took a shower. He further testified that the defendant was panicky. Vereen further testified that the defendant did not change clothes after the shower and he was not covered in blood.
Apparently, the jury made a credibility determination in favor of Boone’s trial testimony. Such a determination addresses the believability or weight, not the sufficiency, of the evidence against the defendant. It is the function of the trier of fact to make such a determination.
Moreover, the testimony of Boone and Butler are consistent about the essential elements of the crime, even though their versions of the event differ. Both Boone and Butler testified that the defendant forced his way into Boone’s apartment. They testified that the defendant was armed with a gun and hit Boone several times with it. They both testified that the defendant came from the back of the apartment to flee out of the front door of the apartment after his gun discharged. Also, Boone testified that after the defendant fled the apartment, he noticed that his gold bracelet, which 1 inhad been in his bedroom, was missing. Boone testified that during the attack, it was the defendant who entered his bedroom. This evidence is sufficient for a reasonable jury to find that the state established that the defendant took a gold bracelet from Boone’s immediate control with force and intimidation while armed with a gun thereby satisfying every element of the crime. This assignment is therefore without merit.

Excessive Sentence

Floyd argues that the trial court erred in not giving enough consideration to the lesser sentence received by Butler. Floyd also argues that his sentence is grossly disproportionate to the seriousness of the offense.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 716 So.2d 641. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Landos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history In (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, *391 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (1988). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, 2000-1467 (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
Secondly, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
The trial court reviewed the pre-sen-tencing investigation report and noted the defendant’s prior convictions for possession of marijuana and possession of cocaine. The trial court noted the defendant’s social, educational history, and work history. The trial court characterized the crime as a home invasion robbery. The trial court found that the defendant | ^was in need of correctional treatment or a custodial environment that would best be provided by an institution. The trial court found that a lesser sentence would depreciate the seriousness of the crime, particularly noting several aggravating circumstances, such as the defendant exhibiting deliberate cruelty to the victim and creating a risk of great bodily injury to the victim. In addition, the trial court noted the defendant’s use of a dangerous weapon, which resulted in significant permanent injury to the victim. The court did not find any mitigating factors applicable to the case. The record clearly indicates that the trial court complied with La.C.Cr.P. art. 894.1 by articulating a factual basis for the defendant’s sentence.
Moreover, there is no requirement that co-defendants be treated equally by the sentencing judge. State v. Rogers, 405 So.2d 829 (La.1981); State v. Taylor, 485 So.2d 117 (La.App. 2d Cir.1986). The disparity of sentences between co-defendants is only a factor to be considered along with all other appropriate considerations in evaluating a contention that a sentence is excessive when there is no reasonable basis in the record for the disparity. State v. Quirnby, 419 So.2d 951 (La.1982).
The trial court espoused that after hearing the testimony in this trial, it realized that its sentence to Butler was based on its mistaken perception that Butler was not significantly involved in the crime. Nonetheless, the record is clear that the court thoroughly considered the sentence given to Butler. Boone testified that Floyd was the primary assailant, and that Floyd batted him about the face with the butt of the gun. Floyd faced a sentence | ^exposure of 10-99 years. Consequently, a sentence of 18 years is not excessive. This assignment is therefore without merit.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.