708 So.2d 512 (1998)
STATE of Louisiana, Appellee,
v.
Robert DUNN, Appellant.
No. 30346-KA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
*514 Geary S. Aycock, West Monroe, for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, John L. Sheehan, Assistant District Attorney, for Appellee.
Before GASKINS, CARAWAY and PEATROSS, JJ.
GASKINS, Judge.
Following a jury trial, the defendant, Robert Dunn, was convicted as charged of simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2. He was sentenced to a term of imprisonment of 10 years at hard labor.[1] On appeal, we affirm the defendant's conviction and sentence with instructions.

FACTS
On the morning of May 6, 1996, Mrs. Mary Archie of Ruston and her daughter, who lived across the street from her, drove to Arcadia to run an errand. Mrs. Archie's husband was at work. As they drove away, Mrs. Archie was flagged down by the defendant who had done yard work for her in the past. He asked if she had any work that needed to be done. Mrs. Archie spoke with the defendant, and they agreed that he would do yard work for her later that day. Mrs. Archie testified at trial that she and her family did not giveand have never given the defendant permission to enter their residence for any reason.
That morning, Joseph Hicks, the then-boyfriend of Mrs. Archie's daughter, was present at the daughter's trailer across the street from the Archie family home. Mr. Hicks testified that around noon he observed the defendant clean Mrs. Archie's backyard for about 30 minutes. Mr. Hicks testified that, after cleaning the yard, the defendant knocked on Mrs. Archie's back door. Mr. *515 Hicks testified that neither the Archies, their son, nor their two cars were at the house at that time. According to Mr. Hicks, after receiving no answer to his initial knock, the defendant knocked again, looked around and then pushed the door until it opened. Mrs. Archie testified that she had locked this non-deadbolt door. The defendant was in the house for about 10 minutes and exited it carrying a blue case which he concealed in the backyard behind a tree. The defendant then looked around again and went back inside the house. Upon observing the defendant's re-entry into the house, Mr. Hicks called the police.
Ruston Police Officers Monty Russell and David Frasier were dispatched to the burglary in progress; they were joined by Officer Roni Godbout. Officer Russell went to the front door of the Archie home, Officer Frasier went to the back door, and Officer Godbout positioned herself at the southwest corner of the house where she could see both ends of the house. After attempting to open the locked front door, Officer Russell noticed a small opening in the front bedroom window. He reached for the window blinds to see inside. Immediately he could hear someone running in the house, and he radioed the other officers in back that a person was running their way.
Officer Frasier stood on the back steps with his gun drawn. Seconds after Officer Russell's radio message, the defendant exited the back door, ignored Officer Frasier's order to halt, and grabbed the officer's gun. The defendant fought with Officer Frasier and made a second attempt to flee the house before finally being subdued, kicking and screaming, by all three officers. When apprehended, the defendant had no rake or any other utensil for cleaning the yard in his possession.
Inside the home, the officers found a purse and its contents emptied out on a couch in the front bedroom where Officer Russell first noted the defendant's presence. The officers found a blue box containing snow tire chains in the backyard in a brushy area between trees about 30 yards from the back door. Mrs. Archie testified that the snow chains are normally kept in her bedroom and that the purse's contents had not been dumped onto the couch when she and her daughter left the house that morning. Mrs. Archie had no work in her yard that would necessitate, in her opinion, the use of snow chains on a spring day.
The defendant was charged with one count of burglary of an inhabited dwelling, La. R.S. 14:62.2. Following a jury trial, he was convicted by a unanimous jury.[2] The defendant's motions for new trial and for post verdict judgment of acquittal were denied. The trial court sentenced the defendant to a 10-year term of imprisonment at hard labor. The defendant's motion to reconsider sentence was denied.
On appeal, the defendant raises four assignments of error which present two issues for our review.

SUFFICIENCY OF EVIDENCE
Three of the defendant's assignments of error assert that the trial court erred in denying his motions for new trial and post verdict judgment of acquittal on the basis that the verdict was contrary to the law and the evidence. These challenges to the sufficiency of the evidence present the same basic issue for review: whether the state established two of the three essentials elements of the crime of simple burglary of an inhabited dwellingunauthorized entry and intent to commit a theft.[3] According to the defense, Mrs. Archie's testimony at the defendant's preliminary examination hearing that she "would not have had a problem" with the defendant entering her home for the purpose of retrieving her rake from the porch or getting a glass of water showed that he had authorization to enter her house. The defendant reasoned that, due to this alleged authorization to enter, the state did not prove that he had the intent to commit a theft when *516 he entered the Archie residence. We disagree.

Standard of review
On a motion for new trial, the trial court may assess only the weight of the evidence. We review the denial of a motion for a new trial only for errors of law. La. C.Cr.P. art. 858; State v. Wilson, 27,889 (La.App.2d Cir. 4/8/96), 672 So.2d 448, writ denied, 96-1195 (La.10/25/96), 681 So.2d 361; State v. Whitehead, 29,264 (La.App.2d Cir. 1/22/97), ___ So.2d ___, writs denied, 97-0472 (La.6/30/97), 696 So.2d 1007, and 97-0780 (La.9/26/97), 701 So.2d 981. The decision on the motion rests within the sound discretion of the trial court and the ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. State v. Quimby, 419 So.2d 951 (La.1982); State v. McLemore, 26,106 (La.App.2d Cir. 6/24/94), 640 So.2d 847, writ denied, 94-1908 (La.12/9/94), 647 So.2d 1107; State v. Whitehead, supra. The issue of sufficiency of evidence is more properly raised by means of a motion for post verdict judgment of acquittal. La.C.Cr.P. art. 821.
The criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that all the elements of the crime had been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984); State v. Combs, 600 So.2d 751(La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992). That standard, initially enunciated in Jackson, and now legislatively embodied within La.C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Combs, supra.
For circumstantial evidence to convict, upon assuming every fact to be proved that the evidence tends to prove, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. However, that rule does not establish a stricter standard of review than the rational juror's reasonable doubt formula, but, instead, provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Wright, 445 So.2d 1198 (La.1984). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rationaljuror that the defendant is guilty beyond reasonable doubt. State v. Wright, supra; State v. Combs, supra.
It is the function of the trier of fact to assess credibility and resolve conflicting testimony. State v. Bonnett, 524 So.2d 932 (La.App. 2d Cir.1988), writ denied, 532 So.2d 148 (La.1988). Where the trier of fact has made a rational determination, an appellate court should not disturb it. State v. Combs, supra.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La. 1987).

Elements of offense
In order to convict a defendant of the offense of simple burglary of an inhabited dwelling, the prosecution must prove three essential elements, namely, that: (1) there was an unauthorized entry; (2) the structure was inhabited at the time of entry; and (3) the defendant intended, at the time of entry, to commit a felony or a theft. La. R.S. 14:62.2; State v. Black, 627 So.2d 741 (La. App. 2d Cir.1993).
To satisfy the unauthorized entry element, the prosecution must show that the defendant did not have permission to enter the house. State v. Black, supra.
To satisfy the intent element, the prosecution must show that the defendant had the specific intent to commit a felony or theft at the time of his unauthorized entry. Specific intent, being subjective in character, need not be proven as a fact and may be inferred from the circumstances of the transaction. State v. Black, supra; State v. Burns, 471 So.2d 949 (La.App. 2d Cir.1985). Using an inference to prove an essential element of the crime triggers the use of the circumstantial evidence rule, La. R.S. 15:438. State v. Black, supra.

*517 Unauthorized entry

In satisfaction of the element of unauthorized entry, the owner of the residence, Mrs. Archie testified at trial that she did not give the defendant permission to enter her home. On cross-examination, the defense confronted her with her testimony at the preliminary examination that she would not have "had a problem" with the defendant entering the house to obtain a glass of water or borrow her rake off the back porch. While she admitted that testimony, she nonetheless steadfastly maintained that the defendant did not have her permission to enter the house to get a glass of water or the rake. Nor had he previously entered her home to obtain these items because she would bring them to him at the door if he needed them. She emphatically stated that she had not given the defendant permission to enter her home on the morning of May 6, 1996, and, more particularly, that she had not given him permission to enter her home and remove a case containing snow tire chains from her bedroom.
When a witness is impeached, this simply means the jury, as the trier of fact, is presented with evidence which it could consider and weigh in determining the credibility, or believability, of a witness. Simply because the witness may have been impeached by prior inconsistent statements does not mean that the jury is prohibited from believing anything said by the witness. The inconsistencies in the witness's statements are one of any number of factors the jury weighs in determining whether or not to believe a witness's trial testimony. State v. Bender, 598 So.2d 629 (La.App. 3d Cir.1992), writ denied, 605 So.2d 1125 (La.1992).
The jury was presented with the apparent contradictions in Mrs. Archie's testimony. It implicitly rejected the preliminary examination statements and made a credibility determination in favor of Mrs. Archie and her trial testimony. Such a determination addresses the believability or weight, not the sufficiency, of the evidence against the defendant. It is the function of the trier of fact to make such a determination. When the trier of fact makes a rational determination, it will not be disturbed on appeal.
Mrs. Archie testified that the entry into her permanent inhabited dwelling was unauthorized. This is corroborated by the defendant's own actions of looking around while pushing his way into the home, his attempted flight from the police, and his violent resistance to arrest when caught inside the home. There is no credible evidence indicating that the defendant was authorized to enter the Archie home. Consequently, we find that the unauthorized entry element was satisfied.

Intent to commit a felony or theft inside
The defendant also argues that there is insufficient evidence that he entered the residence with the intent to commit a felony or theft inside. To the contrary, he asserts that it was "just as likely that [he] decided to take the items after having lawfully entered the premises as it is that he had the intent at the time of the entering." Thus, he asserts, the state did not exclude every reasonable hypothesis of his innocence.
After knocking on the back door of the residence and determining that no one was home, the defendant looked around for potential witnesses. Seeing none, he then forced the door open. Minutes later, he exited the house with a blue case, which he concealed outside before making a second entry into the house to steal more items. Before being apprehended, he emptied the contents of a purse onto a sofa. When confronted by the police, he attempted to flee and then resisted their attempts to arrest him with such belligerence that it took three officers to subdue him.[4] Investigation revealed that the blue case removed from the house by the defendant contained snow chains which had been stored in Mrs. Archie's bedroom. At the time of his capture, the defendant had no utensils for yard work in his possession.
In view of these facts, we find the defendant's hypothesis of innocence completely unreasonable. The forcible entry into the *518 house; the disarray of the daughter's purse; the lack of evidence of a search for yard utensils or water within the house; the movement of the case containing snow chains from the bedroom to the bushes in the backyard; and the wild flight from police, all connote premeditation and specific intent to steal the Archies' property prior to the defendant's break-in into the Archie home. The only rational explanation is that the defendant broke into the Archie home to steal their property, i.e., to commit a theft. There is no basis for a reasonable hypothesis of innocence.
Therefore, reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the defendant possessed the necessary specific intent to commit a felony or theft inside the dwelling.
These assignments of error challenging the sufficiency of evidence against the defendant are without merit.

EXCESSIVE SENTENCE
In this assignment of error, the defendant contends that the sentence of 10 years at hard labor imposed by the trial court was excessive. He asserts the trial court failed to give adequate consideration to his alleged mental and substance abuse problems, while giving too much credence to facts from a pending charge against him, i.e., an attempted manslaughter charge apparently resulting from the defendant's struggle with Officer Frasier over the officer's firearm.

Law
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983). The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La. 1988).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, sec. 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Davis, 28,662 (La.App.2d Cir. 9/25/96), 680 So.2d 1296. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Henton, 28,576 (La.App.2d Cir. 9/25/96), 682 So.2d 777, writ denied, 96-2590 (La.3/27/97), 692 So.2d 391.
In the present case, the statutory penalty for simple burglary of an inhabited dwelling is imprisonment at hard labor for not less than one year, without benefit of parole, probation, or suspension of sentence, nor more than twelve years. La.R.S. 14:62.2. The trial judge was aware of and duly considered the defendant's background. He noted that the evidence brought forth at trial revealed that the defendant caused a very dangerous situation by resisting the officers and wrestling Officer Frasier's gun away from him. The trial judge noted that the presentence investigation (PSI) report showed that the defendant had accumulated an *519 "extensive" criminal record dating back to 1970 with "numerous" thefts and simple burglaries. The report revealed that the defendant had been previously sentenced to hard labor "on a number of occasions." Also, the defendant was on probation at the time of his arrest for the present offense. The PSI report considered by the trial court noted that defendant appeared to have serious mental health problems and took a variety of daily medications. The trial court specifically enumerated La.C.Cr.P. art. 894.1 factors of aggravation; it found no mitigating factors.
The sentence imposed is not grossly out of proportion to the seriousness of the offense, nor does it shock the sense of justice. Defense counsel presented no additional evidence of the defendant's alleged mental illness for the trial court's consideration. The trial court thoroughly articulated a factual basis for the sentence in accordance with Louisiana standards. Also, contrary to defense assertions that the defendant merely tried to "push" Officer's Frasier's weapon out of the way as he ran past the officer, Officer Frasier's testimony established that the defendant did, in fact, grab his gun, thereby creating a potentially dangerous situation as the fleeing defendant sought to avoid capture by the police. The trial court properly considered these facts in imposing sentence.
Therefore, this assignment of error is meritless.

ERROR PATENT
Our review of the record reveals one error patent. At the defendant's sentencing, the trial court informed the defendant that he had "three years from this date to file for any post-conviction relief that you wish to apply for in this matter and the period for the commencement of that post-conviction relief probably begins to run today." The correct prescriptive period for seeking post-conviction relief established in La.C.Cr.P. art. 930.8 is "three years after the judgement of conviction and sentence has become final under the provisions of Article 914 or 922." However, this defect has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. State v. Cox, 604 So.2d 189 (La.App. 2d Cir.1992); State v. Mock, 602 So.2d 776 (La. App. 2d Cir.1992); La.C.Cr.P. arts. 921, 930.8(C). The district court is directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of these proceedings. State v. Cox, supra.

CONCLUSION
The defendant's conviction and sentence are affirmed. The trial court is instructed to give the defendant the notice required by La.C.Cr.P. art. 930.8 in accordance with this opinion.
AFFIRMED WITH INSTRUCTIONS.
NOTES
[1] Since the penalty for this offense provides for imprisonment at hard labor "for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years," the trial court imposed an illegally lenient sentence. However, absent timely complaint by the state or the defendant, this court may not correct an illegally lenient sentence. State v. Fraser, 484 So.2d 122 (La.1986); State v. Moore, 26,329 (La.App.2d Cir. 8/17/94) 642 So.2d 679; State v. Smith, 28,280 (La.App.2d Cir. 6/26/96), 677 So.2d 589, writ denied, 97-0850 (La.11/14/97), 703 So.2d 1287.
[2] The minutes show that the jury retired to deliberate at 3:02 p.m. At 3:22 p.m., the jury informed the court that it had reached a verdict.
[3] The defense does not contest the third element, i.e., the structure was inhabited at the time of entry.
[4] Flight and attempt to avoid apprehension are circumstances indicative of awareness of guilt and the jury may infer guilt from them. State v. Fuller, 418 So.2d 591 (La.1982); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).