STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-1103

STATE OF LOUISIANA

VERSUS

PHILLIP A. COOKS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 34758-09
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN E. CONERY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, James T. Genovese, and John E. Conery, Judges.

AFFIRMED.

John Foster DeRosier
District Attorney
Karen C. McLellan
Assitant District Attorney
14th Judicial District Court

**Post Office Box 3206**
**Lake Charles, Louisiana 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Todd Samuels Clemons**
**Todd Clemons & Associates**
**1740 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 477-0000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Phillip A. Cooks**

**CONERY, Judge.**

In this criminal case, Defendant, Phillip A. Cooks, plead guilty pursuant to an "open ended" plea agreement to manslaughter for causing the death of Robert Cannon in violation of La.R.S. 14:31. Defendant was sentenced on January 11, 2011, to the maximum sentence of forty years at hard labor, to be served without benefit of probation, parole, or suspension of sentence, with credit for time served.

Defendant filed a timely pro se Motion to Reconsider Sentence. Additionally, the trial court granted Defendant's new counsel permission to file a Supplemental Motion to Reconsider Sentence. A hearing on both motions was held on December 7, 2011, after which the trial court re-imposed the original forty year sentence of imprisonment with the originally imposed conditions.

On appeal, Defendant first asserts that the maximum sentence of forty years imposed by the trial court was excessive; second, he asserts the trial court failed to consider the mitigating factors required by La.Code Crim.P. art. 894.1; and third, he asserts his imprisonment would create a hardship not only for himself, but for his mother who suffers from significant medical difficulties. For the following reasons, we affirm the re-imposition by the trial court of the forty year maximum sentence for manslaughter with the originally-imposed conditions.

## FACTS

On or about August 3, 2009, fifty-eight year old Robert Cannon was beaten to death in his home in Lake Charles, Louisiana. Mr. Cannon's body was found on August 5, 2009, when his landlord noticed that Mr. Cannon's newspapers and mail had not been retrieved. After talking with the landlord and other neighbors, the Lake Charles Police Department (LCPD) focused their investigation on Defendant, who lived across the street with his girlfriend, Antonia M. Mills.

The couple was living with Ms. Joan Mills, Antonia's sister. Ms. Joan Mills informed investigators that Defendant and Mr. Cannon were friends, and the pair played chess together. According to Ms. Mills, on the night of August 3, 2009, Defendant brought Mr. Cannon's chess board home with him.

During the night of August 3, 2009, after returning from Mr. Cannon's home, Defendant left Ms. Mills' home and rented a room in a Lake Charles motel. He stayed in the hotel for a couple of days and then fled the area, obtaining a ride to Houston, Texas. Detectives with the LCPD contacted Defendant in Houston via his cell phone. During the initial cell phone conversation with detectives, Defendant told them he would come back to Lake Charles to discuss Mr. Cannon's death.

Subsequent calls between the LCPD and Defendant resulted in Defendant crying and refusing to return to Lake Charles because he was afraid he would be arrested for murder. Defendant then changed his phone number and ended his contact with the LCPD.

After phone contact with Defendant was terminated, the detectives of the LCPD sought and obtained a material witness warrant for Defendant. The warrant was sent to Houston and entered into the National Crime Information Center (NCIC). On September 21, 2009, after the entry of the warrant into the NCIC system, Defendant contacted Sergeant Harrell of the LCPD, seeking information on whether he was still wanted for questioning.

Sergeant Harrell informed Defendant of the outstanding warrant. Defendant told Sergeant Harrell he would return to Lake Charles and contact him when he arrived in the city. Defendant never made the promised contact. Two days later, Defendant and his girlfriend were arrested by the LCPD in a Lake Charles motel.

After his arrest, Defendant initially denied any involvement in the death of Mr. Cannon. Defendant then broke down and confessed his involvement in Mr. Cannon's death. In describing his version of what took place, Defendant characterized Mr. Cannon as "his only friend" in the complex where both were living. Defendant admitted he had been drinking when he went to Mr. Cannon's home to ask for a cigarette. After he gained Mr. Cannon's attention by knocking on the window, Defendant said Mr. Cannon invited him into the home. According to the Defendant, the two men were sitting on the Mr. Cannon's bed, smoking, when Mr. Cannon reached over to touch Defendant's shoulder with his hand, an action perceived by Defendant as a sexual advance.

Defendant later admitted to the investigator that Mr. Cannon did not say anything or touch Defendant in any way that could have been perceived as a sexual advance. He admitted to cursing Mr. Cannon and hitting him with a closed fist "four or five times." Mr. Cannon slumped over his bed and fell over with his face or head on the bedrail.

Seeing Mr. Cannon in this position, Defendant panicked and ran from the Cannon home. Prior to his departure, Defendant admitted he saw Mr. Cannon was bleeding and heard him yell, "Hey, Hey," but Defendant did nothing to render assistance to the victim. Defendant stated he believed Mr. Cannon was still alive when he locked the door of Mr. Cannon's apartment and left the scene.

The coroner's examination of the body of Mr. Cannon revealed he died as a result of blunt force injuries to the head. In addition to the head trauma, there were numerous scrapes, bruises, and skin tears about his head, on his abdomen, on both arms, and his left leg. Mr. Cannon also sustained a chip "fracture" on his forehead and a fracture of the upper portion of his left humerus, the upper arm bone. The

coroner's report indicated the time of death was during the evening hours of August 3, 2009.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENTS OF ERROR

Defendant claims his re-imposed forty-year maximum sentence for manslaughter is excessive. Defendant contends the trial court failed to consider three of the factors of La.Code Crim.P. art. 894.1: 1) there were grounds to justify his behavior; 2) he did not intend the serious harm that resulted; and 3) imprisonment would be a hardship to himself and Demetria Cooks, his mother, who was allegedly dependent on him for care and who has significant medical problems.

Defense counsel also contends the Presentence Investigation Report (PSI) contains inaccurate/inconsistent information, and four of the sentencing factors pursuant to La.Code Crim.P. art. 894.1 (B) favor Defendant:

> (25) There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense.
>
> . . . .
>
> (29) The defendant's criminal conduct was the result of circumstances unlikely to recur.
>
> . . . .
>
> (31) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
>
> . . . .

4

(33)  Any other relevant mitigating circumstances.

## LAW AND DISCUSSION

Because his guilty plea to manslaughter was "open-ended," Defendant was not sentenced pursuant to an agreed-upon sentence under La.Code Crim.P. art. 881.2. Thus appellate review of his sentence is not prohibited. *State v. Pickens*, 98-1443 (La.App. 3 Cir. 4/28/99), 741 So.2d 696, *writs denied*, 99-1577 (La. 11/5/99), 751 So.2d 232, 01-2178 (La. 4/19/02), 813 So.2d 1081.

Defendant and his attorney also filed proper motions to reconsider his sentence pursuant to La.Code Crim.P. art. 881.1, stating specific grounds therefor. *State v. Vollm*, 04-837 (La. App. 3 Cir. 11/10/04), 887 So.2d 664. Thus, Defendant is not precluded from objecting to his sentence on appeal. *State v. Davis*, 06-922 (La.App. 3 Cir. 12/29/06), 947 So.2d 201.

### *Trial Court's Sentence*

This court's review of whether or not an excessive sentence has been imposed on a defendant by the trial court consists of two factors: 1) a determination of whether the sentence is unconstitutionally harsh and, thus, violates La.Const. art. I, § 20; and 2) a determination of the trial court's consideration and weight given to the relevant sentencing factors established in La.Code Crim.P. art. 894.1. *State v. Smith*, 99-606 (La. 7/6/00), 766 So.2d 501.

### *Louisiana Constitution, Article 1, § 20*

Louisiana Constitution Article 1, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." In order for a sentence to be considered excessive, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is,

therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court's discretion is vast in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-165 (La. 6/30/00), 765 So.2d 1067. Thus we must consider as the only relevant question, whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996).

We are mindful, in a review of a sentence imposed, that the trial court "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *Id.* at 958.

***Louisiana Code of Criminal Procedure Article 894.1***

In *State v. Decuir*, 10-1112, pp. 2-3 (La.App. 3 Cir. 4/6/11), 61 So.3d 782, 785, (quoting *State v. Scott*, 36,763 p. 3 (La.App. 2 Cir. 1/29/03), 836 So.2d 1180, 1182), this court explained:

> Louisiana Code of Criminal Procedure Article 894.1 contains a series of factors to be considered by the trial court in sentencing a defendant. In considering these sentencing guidelines, the trial court must "state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La.Code Crim.P. art. 894.1(C). However, to comply with La.Code Crim.P. art. 894.1(C), the trial court "need not articulate every circumstance or read through a checklist of items." *State v. Anderson*, 95-1688, p. 4 (La.App. 3 Cir. 5/8/96), 677 So.2d 480, 483. Still, the record should establish that the trial court adequately considered the codal guidelines in particularizing a defendant's sentence. *Id.* That is to say, "the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1." *State v. Ellis*, 42,520, p. 23 (La.App. 2 Cir. 9/26/07), 966 So.2d 139, 152, *writ denied*, 07-2190 (La.4/4/08), 978 So.2d 325.

> The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So.2d 688 (La.1983); *State v. Dallas*, 36,397 (La.App.2d Cir.11/6/02), 830 So.2d 1113. The articulation of the factual basis for a sentence is the goal of La.Code Crim.P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So.2d 1049 (La.1981); *State v. Strange*, 28,466 (La.App.2d Cir. 6/26/96), 677 So.2d 587; *State v. Hudgins*, [519 So.2d 400 (La.App. 2d Cir.1988), *writ denied*, 521 So.2d 1143 (1988)].

However, "[t]here is no requirement that specific matters be given any particular weight at sentencing." *Id. (*quoting *Ellis*, 966 So.2d at 153).

This court has further opined that the trial court may consider the substantial benefit a defendant received from a plea agreement when it results in a substantial reduction in his potential incarceration. *State v. Williams*, 02-707 (La.App. 3 Cir. 3/5/03), 839 So.2d 1095. When a defendant has received a reduction in the potential length of incarceration, the trial court's discretion to impose the maximum sentence is enhanced. *State v. Edwards,* 07-1058 (La.App. 3 Cir. 3/12/08), 979 So.2d 623, *writ denied*, 08-2693 (La. 9/18/09), 17 So.3d 391.

### *Plea Hearing on September 27, 2010*

In this case, Defendant's sentencing exposure was reduced by the State's dismissal of a separate charge of Possession of a Controlled Dangerous Substance II (cocaine). Additionally, the State agreed not to file a habitual offender bill against Defendant in exchange for his plea, despite his two prior felony convictions and the severity of the beating of Mr. Cannon. If the State had not chosen to dismiss the drug charge and had chosen to file the habitual offender bill, both part

7

of the plea agreement, Defendant was facing a mandatory sentence of life imprisonment on the manslaughter charge pursuant La.R.S. 15:529.1(A)(3)(b) and an additional maximum of five years on the cocaine charge.

During the plea colloquy on September 27, 2010, Defendant was apprised by the trial court of the possible consequences, including the increase of the maximum sentence that might be imposed by the court had the State chosen to file a habitual offender bill and not dismissed the additional drug charge. The discussion on the record reflects that the State was only certain of one prior felony conviction at the time of the Defendant's plea. The colloquy between the trial court and the Defendant reflects that Defendant was so informed and states as follows:

**BY THE COURT:**

Q      The state is agreeing not to file an habitual offender bill, which means that the penalty you face in this case will only be 40 years. Okay. That's the maximum I can give you. But in the future if you get convicted of another one - - this will count as one. The other one can count as another one. That next one will be your third. And it severely increases the penalty that you can be exposed to for that particular crime. For instance, this case would be 40 - - zero to 40. If you were a second offender, the minimum you could get would be 20 and the maximum you could get would be 80. It is half the maximum to twice the maximum. And as a third offender, it is even greater than that. Okay?

A      Yes, sir.

Defendant thus declared on the record his understanding of the benefit he received after the State abstained from filing the habitual offender bill and the State's agreement to dismiss the pending drug charge.

In fact, the PSI introduced at the sentencing hearing showed Defendant had another prior felony. Had Defendant been adjudicated a habitual offender, this additional felony would have made him a third offender facing a mandatory life sentence under La.R.S. 15:529.1(A)(3)(b). In short, Defendant received a

8

substantial benefit when he accepted the State's plea offer to enter an open-ended guilty plea to the manslaughter charge in exchange for the State's agreement to dismiss a pending felony cocaine charge and not file a multiple offender bill against him.

### *Original Sentence of January 11, 2011*

At Defendant's original sentencing on January 11, 2011, the trial judge set forth the main factors he considered in imposing the maximum forty-year sentence. At the time of the original sentencing, the trial court had the benefit of the PSI, which detailed Defendant's prior criminal history.

THE COURT:

Okay. But I'm particularly concerned, Mr. Cooks, with your past history. It began when you were a very young man. And you didn't do very well on probation, you kept getting into trouble: theft, assault. Then you had a robbery in '99, which I think -- it looks like it was dismissed. I gather what that means is that you probably turned 18 before it changes [sic]. I'm not sure. But in any event, once you became an adult, then you continued with that. You were convicted of robbery in 2000, put on probation, and then that probation was then revoked. You had a felony conviction for possession of drugs. And you had a possession of drugs here in this court which was dismissed in return for your plea agreement.

Any lesser sentence, to me, would seriously deprecate the seriousness of this crime. And considering your record, I think it's entirely appropriate that you receive the maximum sentence provided by law, which is 40 years with the Department of Corrections, and that's what I'm going to sentence you to.

### *Hearing on the Motions to Reconsider Sentence*

In the Motion to Reconsider Sentence, defense counsel contended that the trial court was not aware of Defendant's personal history at the time of the original sentencing. After granting and holding a hearing on the *pro se* and counsel-filed Motions to Reconsider, the record reflects the trial court was fully aware of all of the factors argued by Defendant and his new counsel in support of a sentence less

9

than the forty-year maximum imposed at the original sentencing on January 11, 2011.

In reviewing a sentence for excessiveness, the Louisiana Supreme Court further instructs that an appellate review of a sentence should include the following three factors: 1) the nature of the offense, 2) the circumstances of the offender, and 3) the sentences imposed for similar crimes. *Smith*, 766 So.2d 501.

*The nature of the crime:*

The following factual basis was set forth by the State at the guilty plea proceeding:

> This occurred between August 3rd and August 4th, 2009. Cooks, who was 26 years of age at the time, beat Robert Cannon, who was 58 years of age at the time, to death.
>
> The autopsy report--in the autopsy report the coroner concluded that Cannon died as a result of blunt force injuries to the head as there were numerous scrapes, bruises, and skin tears about his head and on his abdomen, both arms, and his left leg.
>
> On September the 23rd after receiving some anonymous tips and -- the Lake Charles city police had received some anonymous tips, and he was -- had left the area shortly after this happened. They were able to find Cooks on a material witness warrant as he was in a hotel in Lake Charles. He gave a videotaped statement to the city police.
>
> In his statement he said that he believed that Cannon had made sexual advances toward him. This infuriated him so much that he began to hit him about the face. Tried to get up, he hit him again numerous times, approximately four or five times; and he fell across the bed and was bleeding. He then left Cannon's home and fled to Houston.

*The nature and background of the offender:*

Prior to the January 11, 2011 sentencing, the trial court reviewed the PSI. It included Defendant's conviction in 2000 for robbery, for which he was sentenced to probation. Defendant's probation was revoked, and, thereafter, Defendant was sentenced to four years in the Texas Department of Justice. The PSI also included

Defendant's conviction in 2004 for possession of drugs for which he was sentenced to four years in the Texas Department of Justice. Thus, with the manslaughter conviction, Defendant was classified as a third offender. The trial court also noted, in his reasons for sentencing, Defendant's convictions for several misdemeanor offenses. At the time of the incident, Defendant was twenty-six years old and was twenty-eight at the time of the initial sentencing.

As to his personal background, Defendant's mother, Ms. Dimetria Cooks, testified at the hearing on the Motion to Reconsider Sentence that between the ages of eight and ten, Defendant was diagnosed by a psychiatrist as bipolar and as having Attention Deficit Hyperactive Disorder. He was also admitted into psychiatric hospitals for short periods of time. Defendant's mother further testified that she received Social Security Disability checks for Defendant until he was seventeen and that up until that time Defendant was on medication for his diagnosed disorders.

Although Ms. Cooks testified as to the treatment received by Defendant as a teenager, she was unable to provide the trial court with any documentation to confirm said treatment. Defendant confirmed during his testimony that as an adult he did not seek treatment or take any medication for any of his previously diagnosed conditions, as he claimed he was functioning well.

In addition, Ms. Cooks testified that Defendant was molested as a child by her brother, Defendant's uncle. Defendant and his counsel urge that the molestation contributed to his alleged perception of the actions of Mr. Cannon at the time of the incident. The record is devoid of any evidence that Defendant's perception of Mr. Cannon's actions was based on Defendant actually having

11

knowledge of any prior homosexual behavior by Mr. Cannon. In fact in the PSI, Defendant also admitted he may have misinterpreted Mr. Cannon's action.

The PSI also contained an interview with Mr. Cannon's twin brother, who denied the allegation that Mr. Cannon was a homosexual. The accusation of homosexual behavior by Mr. Cannon was also disputed in a letter to the trial court from Mr. Cannon's cousin, which was admitted into evidence. The only other claim that Mr. Cannon was a homosexual was an allegation made by Defendant's girlfriend, Antonia M. Mills, in the PSI. However, she was not called to testify at either the original sentencing or the hearing on the Motions to Reconsider Sentencing. Defendant's claim that his perception of the situation constitutes grounds to justify his behavior has no merit. Likewise, his claim that he did not intend the serious harm that occurred is belied by the coroner's report and also has no merit.

In addition to defending his actions in beating Mr. Cannon, Defendant also claimed the forty-year sentence would create a hardship on his mother, Ms. Cooks, who was living in Houston, Texas, and suffered from a number of serious medical conditions. Although Ms. Cooks has six other children, she testified that Defendant was the one she depended on for help and support. However, when Ms. Cooks was cross-examined by the State about her care while Defendant was living in Lake Charles, she admitted a younger daughter took care of her.

Ms. Cooks testified that she receives Social Security disability benefits. She also testified that Defendant occasionally brought her small amounts of money, the last in the amount of $40.00. Prior to Defendant turning seventeen, as previously discussed, she also received Social Security disability payments for Defendant. She also claimed she received some back child support from Defendant's father.

12

Defendant was twenty-eight at the time of sentencing, so any monies received by Ms. Cooks on behalf of Defendant had long since stopped. There was no credible evidence that Ms. Cooks was dependent on Defendant in any way. The Defendant's argument that the trial court failed to consider that his imprisonment would be a hardship to his mother, who was allegedly dependent on him for care and support, is also without merit.

Pursuant to La.Code Crim.P. art. 894.1, the trial court is required to make a record that reflects that the guidelines of the article have been adequately considered. It is clear from the record before this court the trial court heard the evidence and argument presented by Defendant and his counsel and granted it the consideration and weight the trial court thought it deserved.

*The sentence imposed for similar crimes by the same court and other courts:*

In *Decuir*, 61 So.3d 782, the defendant, a forty-four-year-old woman, who was a first offender, pled guilty to the reduced charge of manslaughter and was sentenced to thirty-five years at hard labor. The defendant, based on allegations of abuse, shot her husband seven times in the head while he was sleeping. On appeal, this court found the sentence was not excessive.

In *State v. McGhee*, 10-583 (La.App. 3 Cir. 12/8/10), 52 So.3d 318, *writ denied*, 11-62 (La. 5/20/11), 63 So.3d 973, the defendant was convicted of manslaughter and sentenced to forty years at hard labor. During an altercation at a bar, the defendant shot and killed a bystander. The defendant was twenty-six years old at the time of the offense, with one prior offense for the possession of cocaine. On appeal, this court found the sentence was not excessive.

In *State v. Jones*, 05-735 (La.App. 5 Cir. 2/27/06), 924 So.2d 1113, *writ denied*, 07-151 (La. 10/26/07), 966 So.2d 567, the defendant pled to the reduced

charge of manslaughter and was sentenced to forty years at hard labor. The defendant was involved in an ongoing dispute with the victim. The defendant was carrying a gun when he encountered the victim. The victim had a knife. An altercation ensued. The defendant claimed the victim pulled the knife on him, and the defendant shot the victim, resulting in the victim's death. On appeal, the defendant asserted an excessive sentence claim, and the court held in pertinent part:

> Jurisprudence reflects that the maximum penalty for manslaughter has been imposed in similar circumstances. In *State v. Williams,* [03-1537 (La.App. 3 Cir. 6/9/04), 875 So.2d 1043, *writ denied*, 04-1951 (La.12/17/04), 888 So.2d 864,] the defendant was charged with second degree murder and pled guilty to manslaughter pursuant to a plea bargain. At the plea hearing, the State presented the following facts: The defendant and the victim, who were involved in an ongoing dispute, became involved in a confrontation. The defendant shot the victim with a twelve-gauge shotgun at point-blank range. The victim died and defendant was sentenced to forty years imprisonment at hard labor. The Third Circuit found no manifest abuse of sentencing discretion by the trial judge.
>
> In *State v. Lanieu*, [98-1260 (La.App. 1 Cir. 4/1/99), 734 So.2d 89, *writ denied*, 99-1259 (La.10/8/99), 750 So.2d 962,] the defendant was charged with second degree murder, but was found guilty by a jury of the responsive verdict manslaughter and sentenced to the maximum of forty years at hard labor. In *Lanieu*, the defendant shot the victim in the head twice after an argument wherein the men cursed at each other in front of the defendant's home. After the shooting, the defendant drove off in the victim's car and dumped the victim's body in a field. At sentencing, the trial court noted that the defendant was a nineteen-year-old first felony offender with no adult criminal history. The First Circuit concluded that the sentence imposed was not grossly disproportionate to the severity of the crime.
>
> In *State v. Maxie,* [594 So.2d 1072 (La.App. 3 Cir.1992), *writ denied*, 598 So.2d 372 (La.1992),] the defendant and the victim were acquaintances who lived in the same apartment complex. The two men had a series of confrontations. The victim and the defendant argued on two separate occasions before the fatal shooting. The victim was shot four times, with the first bullet shattering a bone in the victim's leg and the three others entering the victim's chest cavity. During the first argument, the victim threatened the defendant with a knife and then after the shooting, there was a knife found in the area

of the victim's body. Although a policeman testified that he found an opened knife, other witnesses provided they saw a closed knife near the victim's body. Defendant was charged with second degree murder, but was found guilty of manslaughter and sentenced to the statutory maximum at the time, which was twenty-one years. The trial judge noted in written reasons for sentencing that the defendant was twenty-two years old with a steady employment history and had never been convicted of another crime. The Third Circuit determined this sentence was not excessive, noting that the defendant shot the victim four times over an alleged and unreported theft when the defendant could have avoided the final confrontation with the victim, but instead responded to the victim's actions by arming himself with a rifle. The court also noted that although defendant knew the first bullet struck the victim, he continued to pull the trigger at least three more times.

*Id.* at 1118-19 (footnotes omitted).

The jurisprudence fully supports the maximum sentence under the circumstances of this case.

### *Re-imposition of the Forty-Year Maximum Sentence*

The trial court, after hearing the testimony and argument of counsel, re-imposed the original forty-year sentence on Defendant and stated:

> I thought 40 years was fair before. I certainly listened to the testimony today. I heard some things that people, you know, want to utilize in today's world as excuses or blames of what you call "mitigation." I am sorry that Mr. Cooks was molested as a child. I didn't hear anything, however, that would lead me to believe that there was the reason why he did what he did. I didn't hear a psychologist tell me that he was prone to do those kinds of actions, to - - my recollection is that he severely beat Mr. Cannon and then maybe left. I don't remember exactly all of the facts; but I remember that it was a pretty severe beating that he received.

> And I thought that he got the benefit, in many respects, of a good deal in that the state could have filed an habitual offender bill which would have substantially increased his exposure under the circumstances.

> And the Court has in the past under similar type situations given folks 50 and 60 years for a manslaughter when they were, in fact, habitual offenders similarly situated as Mr. Cooks.

> So, in summary I have heard nothing which would change my mind from the sentence previously imposed.

> So, I have already granted the motion for reconsideration. So, now I will, again, resentence the defendant to 40 years with the department of corrections, give him credit for time served.

The reasons stated by the trial court for re-imposing the sentence of forty years make it clear that the court considered all of the mitigating factors raised by Defendant under La.Code Crim.P. art. 894.1. After due consideration of the evidence and Article 894.1 factors, the trial court found neither the diagnosis in his teenage years, his alleged molestation as a child, or any testimony of the hardship his imprisonment might impose on his mother, Ms. Cooks, served to mitigate Defendant's brutal killing of an innocent man, whose only mistake was to befriend Defendant. We agree with the trial court that under the facts of this case any lesser sentence would "deprecate the seriousness of this crime."

## DISPOSITION

Defendant's re-imposed sentence for manslaughter of forty years with prior conditions is affirmed.

**AFFIRMED.**