# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-208

**STATE OF LOUISIANA**

**VERSUS**

**FRED B. VIDRINE**

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 2022-CR750
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

**********

**SHANNON J. GREMILLION**
**JUDGE**

**********

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Charles G. Fitzgerald, Judges.

**CONVICTION AND SENTENCE AFFIRMED.**

**Paula C. Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Fred B. Vidrine**

**Hon. James Patrick Lemoine**
**Thirty-fifth Judicial District Attorney**
**W. Alex Hooper**
**Assistant District Attorney**
**P. O. Box 309**
**Colfax, LA 71417-0309**
**(318) 627-3205**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**GREMILLION, Judge.**

Defendant, Fred B. Vidrine, appeals his conviction for Possession of a Schedule I Drug with Intent to Distribute, marijuana, in violation of La.R.S. 40:966(A)(1) & (B)(3), and his sentence of twelve years at hard labor. For the reasons that follow, we affirm Defendant's conviction and sentence.

## FACTS

On May 20, 2022, Warden Jace Slater of the Rapides Parish Detention Center was working security at the Louisiana Mudfest in Grant Parish, Louisiana. Warden Slater smelled marijuana emanating from Defendant's vehicle. He approached Defendant and asked whether that was marijuana he smelled. Defendant answered in the affirmative. Warden Slater gestured for Grant Parish Deputy Joseph Dugas to approach. Deputy Dugas could also smell marijuana.

A search of Defendant's vehicle uncovered three mason jars of pre-rolled marijuana cigarettes, sixty-six in total. The mason jars were labeled. Defendant's vehicle also contained a bag that held fifteen pre-packaged gummies laced with THC; a bag that contained ten pre-packaged cookies, also laced with THC; and a bag containing approximately eighty-two "pre-rolled partial papers containing suspected marijuana." Furthermore, the ashtray in Defendant's car contained partially burned marijuana cigarettes and ashes. The contents of the bag were dumped directly into the evidence bag. Defendant also had in his possession $1,736.00 cash in small bills. The marijuana was for medicinal purposes, Defendant told the officers, but Defendant did not have a medical marijuana card.

Defendant was arrested at the scene for possession with intent to distribute. On August 10, 2022, Defendant was charged by bill of information with Possession of a Schedule I Drug with Intent to Distribute. Defendant's trial was held on August 21, 2023.

Defendant challenged two venirepersons on for-cause grounds, Regina Durham and Anita Chelette.

Durham is the sister-in-law of Ryan James, a law enforcement officer who was a potential witness. Initially, Durham indicated that James's role in the matter would not influence her. However, she later indicated that James's status as a member of her family might "possibly" influence her. Further examination elicited from Durham that she would not like to see James attacked as a witness.

Chelette knew James and another potential witness, Flint Greer. Also, the District Attorney is her cousin. Her husband used to be a detective for the Grant Parish Sheriff. Lastly, Chelette stated that she had mixed feelings about the use of marijuana for medicinal purposes because her stepson, who is paralyzed, uses marijuana for pain and has had dependency issues. Ultimately, though, Chelette testified that she could put these things aside and render a fair and impartial verdict.

Defendant challenged Durham and Chelette for cause. The trial court noted that neither counsel questioned Chelette about the impact her relationship to the District Attorney would have on her ability to be fair and impartial. The trial court did not strike Durham as a venireperson because a blood relationship with a potential witness is not listed in La.Code Crim.P. art. 797 as a cause for challenging a potential juror. Defendant did not object to the trial court's ruling. Defendant exercised peremptory challenges to Durham and Chelette.

After the jury was empaneled, the matter proceeded to argument and the presentation of evidence. The first two witnesses were Warden Slater and Deputy Dugas, whose testimony formed the above narrative of Defendant's arrest.

Regarding the quantity of marijuana he found, Deputy Dugas testified:

[N]ear the center console on the floor there was an ashtray that had like a wolf on the front. Inside of that ashtray was paper - - rolling papers that contained green leaf like material, I observed to be marijuana due

2

to smelling like marijuana, and off of my experience, and what it looks like. We located that, and located a plastic bag behind the ashtray. Also in the center area of the vehicle that contained three (3) mason jars with pre-rolled cigarettes inside of the - - they were completely - - the mason jars were completely full all the way around. It - - from my view it looked like they were stuffed completely full of them, there were three (3) of those. At the time, they looked like there were approximately twenty (20) of them in each one. Once that happened we also located packages that had like a seal on them . . .

Q.    For what?

A.    Cookies and baked goods that one [sic] the packaging it showed that they contained THC inside of the product. So when they contained THC and the product also looked like - - saw another baggie in there or smaller baggie that had uh, kind of a gummy material like candies that also had the same label that they contained THC inside of them. On the mason jars itself [sic], it actually had a label on there as well saying THC and looked pharmaceutical grade, but I never seen anything pharmaceutical packaged like that in a mason jar.

Deputy Dugas was impressed with

Uh, the packaging of how everything was packaged, it was definitely not what I've encountered commonly um, the mason jars with the labels on them threw me off. Just due to the fact that I've never seen packaging quite like that before. Um, also the fact that everything was packaged individually in precise amounts being the cookies and the gummies as well.

The typical marijuana cigarette weighs between .8g to 1g in Deputy Dugas's experience. The marijuana cigarettes seized from Defendant were typical in size, but not in quantity; it is unusual to seize so many pre-rolled cigarettes at one time.

Randall Robillard is a forensic chemist who has been employed by the North Louisiana Crime lab in Shreveport, Louisiana, for thirty years. He was tendered as an expert in forensic chemistry and in the detection and identification of controlled dangerous substances. Robillard testified that he initially weighed all of the substances seized from Defendant's car and determined that their total aggregate weight was greater than two and one-half pounds. Robillard explained:

[T]hen our procedure at the lab is to test that amount to - - to prove that there is two and a half (2 ½) pounds of - - of material that contains marijuana or THC. Um, however, in this case there's so many items

3

that I emailed the D.A.'s Office, and I said um, I'm going to give you the total weight, total weight is over two and a half (2 ½), can I just test one of each? Um, of the material and the items of it because if I - - if I was to test this many things it would take me, you know, three (3) or four (4) days just to do this one case, and um - - and so um, he agreed to that, and at that point I began my testing[.]

Robillard tested the gummies and cookies and determined that they did contain marijuana. Robillard testified that "aggregate weight" means "the gross weight of a submission of evidence" and is defined by statute. The gummies seized from Defendant's vehicle weighed 368.8 grams, the cookies weighed 688.7 grams, the bag of cigarettes weighed 99.8 grams, and the bag of partially burned cigarettes weighed 26.3 grams. Even without the bag of partially burned cigarettes, the aggregate weight of the other evidence still exceeded two and a half pounds, or 1,133.9 g.

Robillard does not differentiate between the marijuana and other ingredients in a marijuana-laced cookie because of his interpretation of the defining statute. In any event, the North Louisiana Crime lab does not possess the capability to determine the concentration of THC in a cookie. When asked if he could determine the amount of THC in the cookies if he knew the weight of the other ingredients in the cookies, Robillard replied, "The way you would do that is you would weigh out a certain amount um, and exact the THC out, and determine the weight percent is what's [sic] it's called, and that would do - - tell you the percentage of the material that had THC in it."

Zach Daenan, an investigator with Louisiana State Police, was accepted as an expert in the use, possession, distribution, and investigation of controlled dangerous substances, including marijuana. According to Trooper Daenan, the number of pre-rolled marijuana cigarettes was not consistent with what he would normally find in simple possession cases. Similarly, Trooper Daenan described the packaging of the

gummies as being homemade rather than from a dispensary. According to the trooper, both the label on the packaging and the lab report state it contained fifteen individual bags. Each bag contained five gummies. Trooper Daenan could not tell that the cookies were laced with THC. He could not express an opinion on how much cookie would impart "an appropriate feeling[.]" The packaging, though, was not consistent with personal use in Trooper Daenan's opinion. Of the items seized, only the partially smoked marijuana cigarettes were consistent with personal use.

Trooper Daenan admitted that eighty-two partially smoked joints was a large number. He admitted that many people use marijuana to alleviate pain and nausea. Some people do develop a tolerance to marijuana. The trooper did not think any lab in Louisiana could determine the potency of THC-laced edibles.

Defendant testified on his own behalf. Defendant testified about his addiction to pain pills, drugs, and marijuana as well as his criminal history. He had been injured in automobile accidents that brought on chronic pain. Defendant further testified as to his continued marijuana use. Defendant identified the State's exhibits as cookies and candies he made.

Describing the recipe for making the candies, Defendant testified that he used three and one-half grams of "flower" for one batch of 192 candies. Defendant identified a label on one of the bags of candy, pointing out the warning in small print, which identified the product. When defense counsel pointed out that Defendant knew what was in the bag, Defendant replied, "Yeah, but I wouldn't want anybody else to grab it."

Defendant estimated that he ate two to three bags of the candy per day, explaining that because the candy was not strong, it took more to ease his pain. Defendant further explained that each bag of candy contained five pieces of candy, which was a dose.

5

When asked what he normally did after making the candy, Defendant testified that he would take the smashed flower and mix it with butter. This was cooked for eight hours, then used to make cookies or sauté meat. When making cookies, Defendant testified that he added the butter to whatever cookie mix he was using. For example, to make peanut butter cookies, Defendant testified that he used a cookie mix by Betty Crocker, which called for a half a stick of butter and an egg. According to Defendant, the half stick of butter he used is equal to one-half a cup and contained three and one-half grams of marijuana. Defendant testified that he used large eggs and that each batch of cookies yielded about twenty cookies.

According to Defendant, he obtained a medical marijuana card in 2019. When defense counsel asked him to describe a typical day of marijuana use, Defendant testified:

> I wake up, smoke first thing, then I usually eat a couple of cookies, and uh, I start eating candies probably 9:00 o'clock or somewhere around there, I'll eat thirty (30) of them during the day. I usually go through about two (2) or three (3) packs per day. And then at night before bed, I eat a couple more cookies.

Defendant further explained that he smoked throughout the day, about ten joints, ate two to three packs of gummies, and ate about two packs of cookies.

Defendant testified that he had planned to attend Mudfest for five days and brought his marijuana because it was his medicine.

On cross-examination, Defendant agreed that the seized containers held marijuana. Defendant admitted that he had been convicted once of distribution of a controlled dangerous substance and once of possession with intent to distribute a controlled dangerous substance. On re-direct, Defendant testified that he did not sell his medicine. Defendant testified that the money found on him was earned from his lawn care business.

6

Defendant testified that the marijuana he had on him did not weigh two and one-half pounds. According to Defendant, the edibles he had on him contained only an "ounce and a half" of marijuana.

The jury returned a unanimous guilty verdict. The trial court sentenced Defendant to twelve years at hard labor. He appeals both his conviction and sentence.

## ASSIGNMENTS OF ERROR

I. The evidence is insufficient to support the guilty verdict of possession with the intent to distribute a schedule I controlled dangerous substance, marijuana, greater than 2 1/2 pounds.

A. The marijuana cigarettes seized from Mr. Vidrine weighed only 99.8 grams.

B. The controlled dangerous substances law does not apply to the edibles seized in this case. The weight of the cookies and candy containing THC seized from Mr. Vidrine cannot be aggregated with the weight of the marijuana cigarettes for purposes of 40:966.

C. No rational trier of fact could find the burnt marijuana and ashes seized from the ashtray of Mr. Vidrine's truck were possessed with the intent to distribute. The weight of the contents of the ashtray cannot be aggregated with the marijuana cigarettes for purposes of 40:966.

II. The trial court erred in denying defense challenges for cause of Anita Chelette and Regina Durham as their responses as a whole during voir dire demonstrated an inability to be impartial.

III. The trial court failed to comply with the mandates of Code of Criminal Procedure Article 894.1. Considering the mitigating factors presented, the twelve-year hard labor sentence imposed is excessive for Mr. Vidrine.

## ANALYSIS

*Errors patent*

Louisiana Code of Criminal Procedure Article 920 requires that we review all appellate records for errors patent on the face of the record. We find one error patent.

At sentencing, the trial court advised Defendant that he had "two years from the date this conviction becomes final to seek any Post Conviction Relief that [he]

7

may wish to seek." According to La.Code Crim.P. art. 930.8(A), the time period for filing post-conviction relief is "two years after the *judgment of conviction and sentence* has become final[.]" (emphasis added). Thus, the advice given at sentencing was only partially accurate. In *State v. Hudson*, 23-760, p. 2 (La. App. 3 Cir. 5/8/24) (unpublished opinion) (2024 WL 2046021), this court found the trial court's advice that Hudson had "'two years from the date this conviction becomes final to file an application for post-conviction relief'" was inadequate. *See also State v. Wilhite*, 55,023 (La.App. 2 Cir. 5/17/23), 361 So.3d 1246, *writ denied*, 23-847 (La. 3/5/24), 379 So.3d 1271; *State v. Robertson*, 53,970, (La.App. 2 Cir. 6/30/21), 322 So.3d 937; and *State v. Simpson*, 50,334, (La.App. 2 Cir. 1/13/16), 186 So.3d 195.

Accordingly, the trial court is ordered to correctly inform Defendant of the provisions of article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that Defendant received the notice in the record of the proceedings.

*Assignment of Error I*

The thrust of Defendant's argument is that the gummies and cookies contained substances other than marijuana. Accordingly, he should not have been charged with possession with intent to distribute a quantity greater than two and one-half pounds. Defendant complains that the weight of the individual packaging of the cookies and gummies should not be included. The contents of Defendant's ashtray should not have been weighed as items possessed with intent to distribute. Further, Defendant argues that the Uniform Controlled Dangerous Substances Act does not apply to the edibles.

8

ASHTRAY CONTENTS

We will first address the contention that the residue from Defendant's ashtray should not have been included in the gross weight of marijuana for which Defendant was charged. Apart from the contents of Defendant's ashtray, the following items and weights were seized:

| | |
|---|---|
| gummies | 368.8 g |
| cookies | 688.7 g |
| cigarettes | 99.8 g |
| total | 1.157.3 g |

As noted above, two and a half pounds equals 1,133.9 g. Accordingly, we need not consider the contents of the ashtray if the "as prepared" weights of the gummies and cookies is considered as opposed to only the weight of the marijuana within them.

THE UNIFORM CONTROLLED DANGEROUS SUBSTANCES LAW

The Uniform Controlled Dangerous Substances Law governs the legality of production, sales, and use of controlled dangerous substances in Louisiana. La.R.S. 40:961—996.7. Pursuant to La.R.S. 40:966(B)(2)(b), a person convicted of possession with intent to distribute marijuana with an aggregate weight of two and a half pounds or more shall be imprisoned at hard labor for one to twenty years and liable for a fine of up to $50,000.00.

Defendant contends that the cookies and gummies do not fall within the scope of the Uniform Controlled Dangerous Substances Act. Rather, these should be considered "industrial hemp" per the exception provided for in La.R.S. 40:961.1: "Notwithstanding the definitions provided for in R.S. 40:961(6) and (27), the provisions of the Uniform Controlled Dangerous Substances Law shall not apply to industrial hemp or consumable hemp products as provided for in Parts V and VI of Chapter 10-A of Title 3 of the Louisiana Revised Statutes of 1950."

9

"Industrial hemp" is defined as, "the plant Cannabis sativa L. and any part of such plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a total delta-9 THC concentration of not more than 0.3 percent on a dry weight basis." La.R.S. 3:1462. Because Robillard was not able to test for the THC concentration in the cookies and gummies, "any question [of] whether the edibles . . . were 'industrial hemp' or 'hemp' based on THC concentrations must be resolved in favor of that classification[,]" per Defendant's brief. Reliance on the provisions of Title 3 is misplaced. "Marijuana" is defined in La.R.S. 40:961(27):

> (27)(a) "Marijuana" means all parts of plants of the genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.
>
> (b) "Marijuana" shall not include the following:
>
> (i) Industrial hemp that is in the possession, custody, or control of a person who holds a license issued by the Department of Agriculture and Forestry, or is cultivated and processed in accordance with the U.S. Agriculture Improvement Act of 2018.
>
> (ii) The mature stalks of plants of the genus Cannabis, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.
>
> (iii) Cannabinoids when contained in a drug product approved by the United States Food and Drug Administration.

Industrial hemp, then, is not considered marijuana when in the possession of one holding a license issued by the Department of Agriculture and Forestry or when cultivated or harvested in accordance with the U.S. Agricultural Improvement Act of 2018. According to La.R.S. 3:1471, it is unlawful for any person to handle industrial hemp without a license. Furthermore, consumable hemp products cannot be distributed without a permit. La.R.S. 3:1482(A)(1). No evidence was submitted

10

in this case to show that any of these requirements were met. This contention lacks merit.

We now turn to the definition of "aggregate weight." Section 961(4) provides that "'Aggregate' means the gross weight of an exhibit of evidence." Importantly, the definition refers to the *gross* weight of the exhibit. "Gross weight" is not defined in the statute. The Louisiana Supreme Court has stated the following regarding statutory interpretation:

> Statutory interpretation begins with "the language of the statute itself." *Cat's Meow v. City of New Orleans*, 1998-601, p. 15 (La. 10/20/98), 720 So.2d 1186, 1198; *see also Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("[C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there . . . . When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (citations and internal quotation marks omitted).

*State v. Santiago*, 23-501, p. 4 (La. 5/10/24), 384 So.3d 879, 882 n.3 (alterations in original).

*Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) defines "Gross" as "an overall total exclusive of deductions." Louisiana Revised Statutes 40:964 provides for the "scheduling" of controlled substances. Subsection (C) lists "hallucinogenic substances," and provides, in pertinent part (emphasis added):

> **C. Hallucinogenic substances.** Unless specifically excepted or unless listed in another schedule, *any material, compound, mixture, or preparation*, which contains *any quantity* of the following hallucinogenic substances, or which contains any of their salts, isomers, or salts of isomers, whenever the existence of such salts, isomers, or salts of isomers is possible within the specific chemical designation, for purposes of this Subsection only, the term "isomer" includes the optical, position, and geometric isomers:
>
> . . . .
>
> (40) Marihuana

11

. . . .

> (69) Tetrahydrocannabinols, including synthetic equivalents and derivatives, except for tetrahydrocannabinols in hemp

The plain wording of the relevant statutes outlined above supports the methodology employed to determine the weight of the products in Defendant's possession at the time of his arrest. We find no merit in Defendant's assignment of error 1.

*Assignment of Error 2*

Defendant's challenges for cause to the empanelment of Durham and Chelette form the basis of Defendant's second assignment of error. Both were challenged for cause on the basis of their relationships to law enforcement, the District Attorney, and witnesses in the case. The trial court declined to strike the potential jurors for cause given their responses that they could remain objective. Defendant did not object to the trial court's ruling.

Louisiana Code of Criminal Procedure Article 800 provides, in pertinent part, "A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection." Although defense counsel challenged both jurors for cause, he did not object when the trial court denied the challenges. Appellate review of a denial of a challenge for cause is not preserved unless a defendant lodged a contemporaneous objection to the trial court's ruling. See *State v. Clark*, 12-508, p. 99 (La. 12/19/16), 220 So.3d 583, 663, *cert. granted, judgment vacated on other grounds*, ___ U.S. ___, 138 S.Ct. 2671 (2018). Defendant's failure to object to the refusal to strike Durham and Chelette at the time of the trial court's ruling precludes him from assigning that ruling as error.

Louisiana Code of Criminal Procedure Article 894.1 provides general sentencing guidelines for courts. Courts are directed to consider aggravating and mitigating factors in arriving at an appropriate sentence. Defendant contends that the trial court failed to consider several mitigating factors when it sentenced him.

A presentence investigation report was prepared prior to Defendant's sentencing. It noted that Defendant had been convicted of possession with intent to distribute four times, although the most recent was in 2002. It also recounted his even more extensive arrest record.

Defendant asked the court to consider the fact that his vehicle, worth $9,000.00, was seized along with the $1,700.00 confiscated at the time of the offense. The trial court, however, refused to consider the truck seizure: "Mr. Vidrine testified that he was coming to Mudfest with friends and family, and he kept the friends and family in the other vehicle and just brought the dope in in [sic] his vehicle which was an indication to the court of his plan and intent."

The trial court noted that Defendant did not graduate from high school but obtained his GED while incarcerated. The trial court further noted that Defendant obtained a certification as a welder and currently owned a lawn care service. Although Defendant claimed he smoked marijuana to control his back pain, the trial court indicated this was incongruous with his ownership of a lawn care business as well as his several-hour drive to attend Mudfest.

The trial court acknowledged the shifts in attitudes and legislation regarding marijuana. However, the trial court also noted that Defendant obtained a prescription card after his arrest. This, in the trial court's mind, only compounded the offense; for had Defendant sought marijuana for personal use, he could have done so. The trial court noted that marijuana sold illegally often contains adulterants.

13

Defendant had previously been sentenced to ten years for possession with intent to distribute. Defendant argued that he is the sole provider for his sixteen-year-old daughter. The trial court stated that it had considered Defendant's daughter and explained that the amount of marijuana consumed in Defendant's home was part of the reason for the sentence imposed.

The trial court concluded:

> The jury believed that Mr. Vidrine was coming to sell his bakeries [sic] at Mudfest, and the jury got it right. Mr. Vidrine does smoke and eat a lot of marijuana, but he was also coming to sell a lot of marijuana, and ten (10) years in the past wasn't enough, so we'll try twelve (12).

Defendant filed a motion to reconsider his sentence. He stated that he was in poor health and in chronic pain from previous injuries to his neck and back. Defendant also noted that the crime was a non-violent offense, for which the District Attorney had recommended a sentence of only eight years. Defendant asserted that he has been the sole provider for his sixteen-year-old daughter and has supported her both financially and emotionally. Although the trial court appeared to consider Defendant's role as parent to be an aggravating factor, Defendant argued there was no evidence that he had been anything but loving and supportive to his daughter. Finally, Defendant asserted the fine imposed was excessive considering his indigency and the seizure of his truck. The trial court denied the motion without hearing.

Although the trial court considered Defendant's retention of a medical marijuana prescription shortly after the incident as an aggravating factor, Defendant argues his need for medical marijuana should be considered a mitigating factor. Defendant concludes his argument by stating:

> The State advised the court that Mr. Vidrine had at least four prior convictions for possession with intent to distribute, yet the State indicated an eight-year sentence as previously discussed by the court

14

would be an appropriate sentence. (Rec. P. 866). The last conviction Mr. Vidrine had was over twenty years ago. And Mr. Vidrine is the sole care giver and provider for his 16 year-old daughter. (Rec. P. 867, 874). His daughter needs him. Considering these factors in mitigation, the twelve-year sentence is excessive for this offender and offense.

The conclusions and reasons provided by the court for sentencing reflect insufficient consideration given by the court of La.C.Cr.P. Art. 894.1 factors, particularly Mr. Vidrine's health issues and responsibility to provide and care for his daughter. The twelve-year sentence is unconstitutionally excessive, making no measurable contribution to acceptable penal goals and is nothing more than needless imposition of pain and suffering. Eighth Amendment, U.S. Const., La. Const. art. I, § 20; *State v. Campbell,* supra; *State v. Dorthey*, 623 So.2d 1276 (La. 1993).

The State counters that Defendant received a sentence of only sixty percent of the maximum. Defendant's extensive criminal history weighed heavily in the sentence the trial court imposed. The State also noted that Defendant had no remorse for his actions and refused to acknowledge his culpability. Lastly, the State cited several similar cases in which the sentences were comparable.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The

15

relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, 13-771, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002,

1005–06 (alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

> The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith,* 433 So.2d 688 (La.1983); *State v. Dallas,* 36,397 (La.App.2d Cir.11/6/02), 830 So.2d 1113. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. *State v. Jones,* 398 So.2d 1049 (La.1981); *State v. Strange,* 28,466 (La.App.2d Cir. 6/26/96), 677 So.2d 587; *State v. Hudgins,* [519 So.2d 400 (La.App. 2d Cir.1988), *writ denied,* 521 So.2d 1143 (1988)].

*State v. Scott,* 36,763, p. 3 (La.App. 2 Cir. 1/29/03), 836 So.2d 1180, 1182.

Although the trial court in the present case did not specifically set forth the factors in La.Code Crim.P. art. 894.1, the record reflects that the trial court implicitly considered such factors and explicitly stated why it discounted the mitigating factors asserted by Defendant. The trial court reviewed the PSI, detailing Defendant's extensive criminal history. According to the PSI, Defendant is a fourth felony offender. Although Defendant emphasizes that his last conviction was in 2003, the criminal history set forth by the trial court shows Defendant continued to be involved in the possession of controlled dangerous substances and intended to distribute them. The trial court was concerned about the exposure of Defendant's daughter to his extensive drug use in the home.

The supreme court has repeatedly admonished that the relevant question in reviewing a sentence for excessiveness is "'whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" *State v. Aguliar-Benitez*, 21-174, p. 5 (La. 10/10/21), 332 So.3d 618, 620 (quoting *State v. Cook*, 95-2784, p. 3 (La. 5/31/96), 674 So.2d 957, 959, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)). The trial court did not abuse its broad sentencing discretion in this case. This assignment of error lacks merit.

## DECREE

Defendant's sentence and conviction are affirmed. The trial court is instructed to correctly inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within ten (10) days of the rendition of this opinion and to file written proof that Defendant received the notice in the record of the proceedings.

**CONVICTION AND SENTENCE AFFIRMED.**